UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-22913-BLOOM/Torres

MARIETTE WATERS,

    Plaintiff,

v.

CELEBRITY CRUISES, INC.
a Foreign Corporation.

    Defendant.
_____/

## OMNIBUS ORDER ON PLAINTIFF'S MOTIONS *IN LIMINE* AND DEFENDANT'S MOTION *IN LIMINE*

**THIS CAUSE** is before the Court upon Plaintiff Mariette Waters' Motion *in Limine*, ("Plaintiff's Motion"), ECF No. [54], and Defendant Carnival Cruise Corporation's Motion in *Limine*, ("Defendant's Motion"), ECF No. [55]. Defendant filed a Response to Plaintiff's Motion, ECF No. [68], to which Plaintiff filed a Reply, ECF No. [76]. Plaintiff also filed a Response to Defendant's Motion, ECF No. [61], to which Defendant filed a Reply, ECF No. [81]. The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part, and Defendant's Motion is denied.

**I.   BACKGROUND**

Plaintiff brought this medical negligence action against Defendant for damages stemming from a blood transfusion aboard Defendant's vessel, the *Apex*, whereby Plaintiff alleges she contracted the human immunodeficiency virus (HIV). *See* ECF No. [1] ¶ 4. Plaintiff alleges that she suffered a medical emergency necessitating a blood transfusion. *Id*. [1] ¶ 18. Defendant does not store blood on the vessel for transfusions and began to solicit passengers to donate blood via

the public announcement system. *Id*. ¶ 19. Defendant then screened the potential donors, their donated blood, and administered the transfusion. Plaintiff alleges that during this process, Defendant administered a transfusion with HIV infected blood. *Id*. ¶ 19. Plaintiff alleges three counts of negligence: medical negligence (Count I); vicarious liability for medical negligence based on actual agency (Count II); and vicarious liability for medical negligence based upon apparent agency (Count III). *Id*. at 5-12. In their Motions, the parties now seek to preclude certain evidence at trial.

## II. LEGAL STANDARD

"In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id*. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *In re Seroquel Prods. Liab. Litig*., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). Likewise, "[i]n light of the preliminary or preemptive nature of motions *in limine*, 'any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited.'" *Holder v. Anderson*, No. 3:16-CV-1307-J-39JBT, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) (quoting *Miller ex rel. Miller v. Ford Motor Co*., No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004)); *In re Seroquel Prod. Liab. Litig*., 2009 WL 260989, at *1 ("The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." (citing *United States v. Connelly*,

874 F.2d 412, 416 (7th Cir. 1989)).

Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence. Fed. R. Evid. 401, 402; Advisory Comm. Notes, Fed. R. Evid. 401 ("The standard of probability under the rule is 'more probable than it would be without the evidence.'"); *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013). A district court may exclude relevant evidence under Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *Patrick*, 513 F. App'x at 886 (citing *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011)); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010). Rule 403's "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

### III. DISCUSSION

#### A. Plaintiff's Motion *in Limine*

Plaintiff seeks to preclude Defendant from introducing the following categories of evidence at trial:

(1) Testimony that Defendant's medical team saved Plaintiff's life or prevented her from dying;

(2) Evidence or testimony that Defendant's medical staff received applause on the cruise ship for saving Plaintiff's life;

(3) Evidence that Plaintiff stated that she received "much better" medical care on Defendant's

cruise ship than later at a hospital;

(4) Reference to the findings within a study by Defendant's expert, Dr. Klausner, in Peru, as to the reliability of a different HIV rapid test unrelated to the subject incident;

(5) Reference to the MedMira "Reveal" rapid HIV test that was not used in the subject incident and regulatory approval that the MedMira "Reveal" test may have received; and

(6) Evidence that Plaintiff either had or has collateral sources to pay past or future medical bills.

In its Response, Defendant does not oppose Plaintiff's Motion as to (2) and that it has a limited objection to (6). The Court addresses each of the remaining Motions in turn.

### i. Testimony that Defendant's medical team saved Plaintiff's life or prevented her from dying

Plaintiff seeks to preclude any testimony that Defendant's medical team saved Plaintiff's life. Plaintiff argues that such evidence is irrelevant and the probative value is "substantially outweighed by the danger of unfair prejudice and confusion." ECF No. [54] ¶ 5; *See also* Fed. R. Evid. 402, 403. Plaintiff concedes that her request is "rather fact-specific." *Id*. Actions prior to the alleged negligent conduct should be admissible, specifically that Plaintiff did need an emergency blood transfusion without which she would have died. *Id*. ¶ 5. Plaintiff makes the distinction that the outcome *after* the alleged negligence has no relevance to any claim or defense, should be excluded, and offers case law for support. *Id*.

Defendant responds that Plaintiff's request contradicts Plaintiff's concession that she needed an emergency blood transfusion without which she would have died. ECF No. [68] at 3. Defendant relies on *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 99-D-880-E, 2001 WL 617521 (M.D. Ala. Feb. 20, 2021) for the proposition that a district court may deny a motion *in limine* lacking specificity regarding the evidence sought to be excluded. Defendant also argues that

4

the fact that Plaintiff received a life-saving blood transfusion is relevant for a jury to determine whether Defendant's medical team acted in a reasonable manner while administering care to Plaintiff, and that Plaintiff has failed to address how this evidence would be unfairly prejudicial. Additionally, Defendant asserts that Plaintiff's caselaw is distinguishable.

Plaintiff replies that testimony regarding an outcome that emerged after the alleged negligent conduct — here, that she lived — is irrelevant and excludable per Fed. R. Evid. 401, 402. ECF No. [76] ¶ 2. The only relevant evidence pertains to the conduct "leading up to and during the alleged negligence." *Id*.

The Court agrees with Defendant that the facts are relevant to all three counts in this case. The manner in which the blood transfusion was administered is a core issue in this case. Plaintiff fails to meet her burden to show that this evidence is inadmissible. The cases Plaintiff relies on are also distinguishable. In *Laloli v. C.R. Bard, Inc., et al.*, 19 CV-05679-JST, 2021 WL 3141190 (N.D. Cal. July 25, 2021) the court excluded testimony that a medical device saved that plaintiff's life because there was no supporting evidence that it did, in fact, save that plaintiff's life. *Id*. at *1. Here, Plaintiff conceded that she needed the emergency blood transfusion, or she would have died; Plaintiff received the transfusion and she survived. *Laloli* is inapposite. Plaintiff's reliance on *Douglas v. Zachary Indus., Inc.*, 13–cv–1943–Orl–40GJK, 2015 WL 12838969 (M.D. Fla. Sept. 1, 2015) is also misplaced. In *Douglas*, a motion in limine was granted to preclude testimony that the plaintiff could have died in the car accident or that the accident could have been worse. *Id*. *4. The court found that evidence was irrelevant, was unfairly prejudicial, and a "parade of horribles" intended to improperly influence the jury. *Id*. The hypothetical statements in *Douglas* that the plaintiff *could* have died are also distinguishable. Here, Plaintiff concedes that she *would* have died without intervention. Furthermore, Plaintiff has not shown how she would be prejudiced and

5

fails to show that the evidence would be clearly inadmissible on all potential grounds. *Vaughn v. Carnival Corp.*, 571 F. Supp. 1318, 1320 (S.D. Fla. Nov. 29, 2021).

Plaintiff's first motion is denied. As Rule 403 "allows a trial court to exclude evidence that is probative, [it] is an extraordinary remedy which should be used sparingly." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069-70 (11th Cir. 2014). "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009).

### ii. Evidence that Defendant's medical staff received applause on the cruise ship for saving Plaintiff's life

This Motion is unopposed and therefore granted.

### iii. Evidence that Plaintiff stated that she received "much better" medical care on Defendant's cruise ship than later at a hospital

Plaintiff moves to exclude deposition testimony from Dr. Tamyan Joseph, a doctor from Defendant's vessel, the *Apex*, who testified that she spoke with Plaintiff after the cruise. Plaintiff stated that she was not happy with the care received on land after the cruise and that Defendant treated her "much better." ECF No. [54] ¶ 12. Plaintiff argues that this statement was made before learning that she contracted HIV through the blood transfusion Defendant administered and that Defendant failed to follow its own protocols for her transfusion.

Defendant responds that this statement is relevant to claims that Defendant did not give reasonably competent medical care to Plaintiff. ECF No. [68] at 4. Plaintiff replies that the testimony is irrelevant as it has nothing to do with the negligent conduct resulting in Plaintiff being injected with HIV infected blood. ECF No. [76] ¶ 4. Further, Plaintiff argues that such testimony is highly misleading, would confuse the jury, and cause prejudice.

This Motion is denied. Plaintiff's statements are admissible as they indicate Plaintiff's belief that she received good care aboard the *Apex*, which is relevant to her allegations that Defendant failed to provide reasonably competent medical care. As Rule 403 "allows a trial court to exclude evidence that is probative, [it] is an extraordinary remedy which should be used sparingly." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069-70 (11th Cir. 2014). Here, the statement by Plaintiff that she was, to some degree, satisfied with her treatment aboard the *Apex* is probative to the claims of negligence. Plaintiff believed that statement to be true and is appropriate for use by Defendant. Fed. R. Evid. 801(2).

    **iv. Reference to the findings within a study by Defendant's expert, Dr. Klausner, in Peru, as to the reliability of a different HIV rapid test unrelated to the subject incident**

The Court has already ruled that the findings in the Peru Study do not bear on the reliability of the rapid HIV test ("Subject Test") used by Defendant in this matter. Therefore, consistent with this Court's Order on Plaintiff's Daubert Motion to Exclude Certain Opinions of Defendant's HIV Expert, ECF No. [109], this Motion is granted. The Court has determined that there is an insufficient basis to impute findings from the Peru Study to the "Subject Test". *Id*. at 9. Defendant did not introduce any additional reasoning in the briefings in this Motion. This Motion is granted.

    **v. Reference to the MedMira "Reveal" rapid HIV test not used in the subject incident and any regulatory approval that the MedMira "Reveal" test may have received**

The Court has also already ruled that the MedMira "Reveal" test and any regulatory approval that it has does not bear on the reliability of the Subject Test. Therefore, consistent with this Court's Order on Plaintiff's Daubert Motion to Exclude Certain Opinions of Defendant's HIV Expert, ECF No. [109], this Motion is granted. The Court has determined that the expert testimony opining there is an expectation that the rapid HIV tests produced by MedMira, the shared

manufacturer, would be more like each other than HIV tests made by different manufacturers is an insufficient basis to impute findings or the safety of the Reveal Test to the Subject Test. Defendant did not introduce any additional reasoning in the briefings in this Motion. This Motion is granted.

### vi. Evidence that Plaintiff either had or has collateral sources to pay past or future medical bills

Finally, Plaintiff moves to preclude any reference to the availability of collateral sources, including health care sources, to pay Plaintiff's past or future medical bills. ECF No. [54] ¶ 25. Plaintiff cites ample case law regarding the well-established collateral-source rule prohibiting a defendant from reducing its liability by any recovery amounts from collateral sources. *Hillenburg v. Carnival Corp.*, 2016 WL 5922756, at *1 (S.D. Fla. Sept. 21, 2016). This rule carries an evidentiary component, precluding the introduction of any evidence that a plaintiff has received compensation. *Id*.

Defendant responds and agrees to not name collateral sources that have or will pay for Plaintiff's damages. ECF No. [68] at 7. However, Defendant cites to the holding in *Higgs v. Costa Crociere, S.p.A.*, 969 F.3d 1295 (11th Cir. 2020) that the appropriate measure of damages is what the jury determines is reasonable. *Id*. at 1317. Therefore, Defendant asserts that *Higgs* does not prevent it from introducing relevant evidence of "the amount billed, the amount paid, and any expert testimony and other relevant evidence the parties may offer." *Id*. at 1317. Plaintiff did not reply.

Consistent with *Higgs v. Costa Crociere, S.p.A.*, any reference to the availability of collateral sources to pay Plaintiff's past or future medical bills is precluded. However, in *Higgs*, the Eleventh Circuit held that "the appropriate measure of past medical expense damages in a maritime tort case is the amount determined to be reasonable by the jury upon its consideration of

all relevant evidence, including the amount billed, the amount paid, and any expert testimony and other relevant evidence the parties may offer." Higgs, 969 F.3d at 1317. This Motion is granted.

### B. Defendant's Motion *in Limine*

Defendant seeks to exclude the Lab Report from "D.T.", the only blood donor who tested positive for HIV in this incident, and any testimony about its contents. ECF No. [55] at 2. Defendant asserts that the Lab Report has not been authenticated and is inadmissible hearsay. *Id*. Defendant contends that the Lab Report fails as a business record because that exception to hearsay requires a custodian or other qualified witness who can attest to the record-keeping process. Fed. R. Evid. 803(6); *See also* ECF No. [55] at 3. Defendant argues that the Lab Report does not indicate where the blood sample was tested, who conducted the test, at which laboratory, and lacks written certification from a custodian. *Id*.

Plaintiff concedes that that Lab Report should not be admitted as evidence in response. Having agreed that the Lab Report itself is inadmissible, the parties argue whether the experts may rely upon it in forming their opinions, and whether D.T. can testify as to her own medical condition and HIV positive status.

However, Plaintiff argues that a blanket order preventing "any testimony about its contents from any witness" runs afoul of Fed. R. Evid. 703, and that Defendant failed to cite any case law in support. ECF No. [61] at 2. Plaintiff argues that Fed. R. Evid. 703 permits experts to rely on otherwise inadmissible evidence in forming their opinions and allows the expert to disclose data from the Lab Report to the jury consistent with the issues and circumstances in this action. ECF No. [61] at 3.

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would

9

> reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed.R. Evid. 703. In citing Rule 703, Plaintiff argues that Defendant's own expert has relied on the Lab Report to form his opinion that D.T. "had 'advanced, long standing, chronic' HIV infection at the time she donated the blood." *Id.* at 2. Plaintiff argues that the chronic nature and high levels of D.T.'s CD4 levels are important in this action and the probative value of this evidence is not substantially outweighed by any danger of prejudice. *Id*. at 8; *See* Fed. R. Evid. 403. Plaintiff reasons there is no danger of prejudice as Defendant's own expert felt it appropriate to rely on the Lab Report and Defendant used those expert findings in its briefings, the Lab Report was provided by D.T. who is not a party in this action, and there are no indicia of untrustworthiness.

Defendant acknowledges that Rule 703 permits an expert to base their opinions on inadmissible evidence. ECF No. [81] at 2. However, Defendant argues that the balancing aspect of Rule 703 has not been adequately addressed, and the probative value of the Lab Report is substantially outweighed by prejudice. *Id*. at 3.  Defendant offers case law exists to support its argument that Rule 703 is not an "open door" for otherwise inadmissible evidence and that hearsay statements can be precluded from use by expert witness. *Id*. For support, Defendant cites to several cases from outside of this district, including *Turner v. Burlington N. Santa Fe R. Co*., 338 F.3d 1058 (9th Cir. 2003), and *Smith v. Highland Park Ruritan Club*, No. 3:06-CV-351, 2008 WL 2669107 (E.D. Tenn. June 27, 2008).

Regarding the potential for prejudice, Defendant questions the origin of the Lab Report. Defendant argues that the Lab Report was not the result of a subpoena nor through any of the formal discovery processes and, absent authentication, the Lab Report should be treated with

greater caution as it was allegedly generated outside of the United States. ECF No. [81] at 3. Defendant alleges that a person seeking to fabricate a lab report might use the same marking, TDL, as it is the UK's largest lab just "to give it the false appearance of authenticity." *Id*. For these reasons, Defendant argues that the probative value of the Lab Report is substantially outweighed by prejudicial effect. *Id*.

Returning to its Rule 703 argument, Defendant claims that this case is unique. Plaintiff's HIV expert opines that D.T. had HIV for "at least five years" which reveals the underlying data in the lab report, that D.T is HIV positive. *Id*. Therefore, Defendant argues that "the data in the Lab Report that should be excluded — [that] D.T. was diagnosed with HIV — is inextricably linked" to the expert opinion. *Id*. at 3-4. Therefore, Defendant argues that any testimony about the Lab Report and any expert opinions based upon it should be excluded. As the expert cannot separate his opinion from what Defendant argues should be excluded information, that D.T. is HIV positive, Defendant argues that the Court should grant the blanket exclusion requested in its Motion. *Id*. at 4-5.

Finally, Defendant argues that D.T. cannot testify about her HIV status as "based on personal knowledge" as she found out about her HIV status from the Lab Report and hearsay statements from doctors based on the Lab Report. *Id*. at 5. Defendant reasons that any statement D.T. makes would be based on hearsay and inadmissible. Plaintiff argues that D.T. cannot be precluded from testifying as to her own medical condition; district courts routinely deny requests to prevent witnesses from testifying on their own medical conditions. ECF No. [61] ¶ 17. Plaintiff cites case law to support her argument that witnesses are permitted to testify on their personal knowledge of their medical conditions.

The Court accepts Plaintiff's representation that she will not seek to admit the Lab Report

and, as such, that portion of the Motion is granted. However, regarding any reference to the Lab Report, Defendant has failed to meet its burden to show that this evidence is clearly inadmissible and should be excluded on all potential grounds. *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). The cases Defendant relied on are distinguishable. In *Turner v. Burlington*, use of a report was precluded as it was not used as data upon which an expert in his field would reasonably rely to form an opinion pursuant to Rule 703. 338 F.3d 1058. Instead, the expert relied on it as substantive evidence to conclude that a fire was set intentionally. *Id*. at 1061. *Smith vs. Highland Park* is also distinguishable. 2008 WL 2669107. In *Smith*, the court determined that a plaintiff's statement embedded in a medical record alleging that she lost her job due to an injury was inadmissible for use by a different doctor serving as an expert witness. *Id*. at *4. It was precluded as it was speculative, with multiple levels of hearsay. Even then, the court allowed the expert doctor to testify that an injury of that kind might prevent her from performing her job as before. *Id*. Neither case supports precluding any testimony about, or expert opinions based upon the Lab Report here, nor a blanket exclusion.

Furthermore, Defendant's argument that the balancing test within Rule 703 demonstrates that the probative value of the evidence will be substantially outweighed by prejudice warranting preclusion is without merit. The cases Defendant relies on are not persuasive. In *U.S. v. Scrima*, the Eleventh Circuit upheld precluding reliance on "statements to causal business acquaintances when calculating net worth" by an expert accounting. *U.S. v. Scrima*, 819 F.2d, 996, 1002 (11th Cir. 1987). The Eleventh Circuit determined that the defendant "made no showing that qualified accountants customarily rely on statements to casual business acquaintances." *Id*. Defendant's reliance on *Fiorentino v. Rio Mar Assoc.. LP*, *SE*, 381 F. Supp. 2d 43 (D.P.R. 2005) is also unpersuasive. There, that court determined that the probative value of testimony within an expert

report was substantially outweighed by prejudicial effect and confusing the jury when the expert based his opinion on interpretations of terminology used in witness testimony, and where those witnesses were unidentified, and their statements were determined to be unreliable hearsay. *Id*. at *48.

Here, the expert witnesses for both parties have relied on the Lab Report to form opinions without reservation, and there is no indication that any of the data in the report falls outside of the information a doctor in his or her field would reasonably rely on to form their opinion. Finally, Defendant's argument that prejudicial effect exists as the Lab Report was generated overseas in the United Kingdom, and other stated concerns, are not supported by any authority and without merit. The Advisory Committee Notes are clear that Rule 703 is designed allow physicians in particular to use data from "numerous sources and of considerable variety." *Henderson v. Goodyear Dunlop Tires N.A., Ltd.*, 11-cv-295-WKW, 12-cv-510-WKW, 2013 WL 5729377, at *5 (M.D. Ala. Oct. 2013) (citing Fed. R. Evid. 703 Advisory Comm. Notes (1972)). Defendant has failed to show reason that a report from outside the United States should raise suspicion or fall outside of what is permitted under Rule 703.

Furthermore, D.T. is permitted to testify as her personal knowledge of her medical conditions and any physical symptoms experienced. *Cherrone v. Carter*, 17-cv-00232, 2020 WL 12752818, at *4 (S.D. Ind. Aug 17, 2020); *See Gossett v. Stewart*, CV 08-2120-PHX-DGC, 2012 WL 845588 (D. Ariz. Mar. 13, 2012) (noting objections to plaintiff's statements were overruled because the plaintiff "has personal knowledge of his own medical condition."); *See also* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

In sum, the Motion is denied. Experts for both Plaintiff and Defendant may properly rely upon the Lab Report in forming their opinions pursuant to Fed. R. Evid. 703. D.T. may testify as

to her HIV status and any corresponding symptoms.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motions *in Limine*, **ECF No. [54]**, are **GRANTED IN PART AND DENIED IN PART**.

2. Defendant's Motion *in Limine*, **ECF No. [55]**, is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 1, 2024.

                        **BETH BLOOM**
                        **UNITED STATES DISTRICT JUDGE**

cc: counsel of record